UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO.:

TODD FRATILLA and LORRAINE
FRATILLA, individually and on behalf of all
others similarly situated,

        Plaintiffs,

    v.

US DEALER SERVICES INC. d/b/a US
DEALER SERVICES, a California corporation,

        Defendant.

**CLASS ACTION COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF**

**DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT

Plaintiffs, Todd Fratilla ("Todd") and Lorraine Fratilla ("Lorraine") (collectively "Plaintiffs"), bring this class action complaint under Rule 23 of the Federal Rules of Civil Procedure against Defendant, US Dealer Services Inc. d/b/a US Dealer Services ("Defendant" or "USDS"), for its violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). In support, Plaintiffs state:

### INTRODUCTION

1.    Plaintiffs, individually and as class representatives for all others similarly situated, bring this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies resulting from the illegal actions of USDS in negligently or willfully contacting Plaintiffs on Plaintiffs' cellular telephones, in violation of the TCPA, 47 U.S.C. § 227.

2.    USDS placed computer-dialed telemarketing phone calls to Plaintiffs' cellular telephone numbers, which are registered on the National Do-Not-Call Registry, in violation of TCPA regulations.

3.      The calls to Plaintiffs were placed for no legitimate purpose – but were solely intended to solicit business for USDS.

4.      Plaintiffs, and those similarly situated, never consented to receive any calls, including telemarketing calls, from USDS.  Because of the use of automated dialing capable of placing thousands of telemarketing calls per day to unsuspecting receivers in violation of the TCPA, Plaintiffs bring this action on behalf of proposed nationwide classes of other persons who received illegal soliciting calls from USDS.

## PARTIES

5.      Plaintiff Todd Fratilla is a citizen of Broward County, Florida.

6.      Plaintiff Lorraine Fratilla is a citizen of Broward County, Florida.

7.      Defendant USDS is a California domestic corporation with its principal place of business in Van Nuys, California.  USDS currently does business in the State of Florida and throughout the United States.  USDS purports to operate in Florida pursuant to an "automobile warranty" insurance license, which was issued to it by the Florida Department of Financial Services on February 11, 2014 (License #: W180226).  A copy of that license is attached as "**Exhibit A.**"

8.      The president, CEO, and owner of USDS is an individual named Ganna Freiberg ("Freiberg").  Freiberg is a convicted felon, having pled guilty to possession of counterfeit currency with intent to defraud in 1995.

9.      In or about 2015, Freiberg was named as a defendant in a TCPA class action lawsuit involving another automobile warranty company owned by Freiberg called Got Warranty, Inc.  *See Mey v. Got Warranty, Inc., et al.*, Case No. 5:15-cv-101-JPB (N.D. W.Va.).  That lawsuit was settled by Freiberg and the other defendants in 2017.

10.     In a sworn declaration dated July 17, 2017, Freiberg stated, among other things, that USDS "markets automobile extended warranties throughout the United States."  Freiberg further states that he "manage[s] approximately 100 employees with offices in Los Angeles, Las Vegas, New Jersey and Florida," and "maintain[s] a call center in the Philippine Islands."  A copy of the full declaration is attached as "**Exhibit B**."[1]

## JURISDICTION AND VENUE

11.     This Court has federal subject matter jurisdiction over Plaintiffs' TCPA claims pursuant to 28 U.S.C. § 1331, because Plaintiffs' TCPA claims arise under the laws of the United States, specifically 47 U.S.C. § 227.  *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

12.     This court has personal jurisdiction over Defendant under Florida's long arm statute, Fla. Stat. §§ 48.193(1)(a)(1),(2), (6) and § 48.193(2).  Defendant has engaged in substantial and not isolated activity within this state, and has maintained continuous and systematic business contacts with the state of Florida by, among other things, obtaining an "automobile warranty" insurance license issued to it by the Florida Department of Financial Services, and marketing and selling warranties to consumers in Florida pursuant to said license.  Further, Defendant has operated, conducted, engaged in, and carried on a business in this state involving the marketing and sale of automobile warranties to consumers in this state, including the unlawful telemarketing activities that give rise to the claims in this case.  Defendant has engaged in tortious conduct in this state by placing the unlawful telephone calls to Plaintiffs and other class members in this

---

[1] In the Declaration attached as Exhibit B, Freiberg refers to Defendant by its original name, "NCWC Dealer Services."  When the Defendant was originally incorporated in California, its name was NCWC Dealer Services, Inc.  On or about November 2, 2015, Freiberg amended the Defendant's articles of incorporation in order to change its name from NCWC Dealer Services, Inc. to its current name, US Dealer Services, Inc.  A copy of the Certificate of Amendment of Articles of Incorporation is attached as **Exhibit "C."**

district in violation of the TCPA, and Defendant's unlawful telemarketing and solicitation activities have caused injury to Plaintiffs, and other class members, in this District.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiffs reside in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, including the transmission of Defendant's unlawful calls to Plaintiffs.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

14.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

15.     The TCPA was designed to prevent calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiffs. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA").

16.     In enacting the TCPA, Congress found that

[b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

TCPA of 1991, Pub. L. No. 102–243, § 2(12); *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *2, 4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

17.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any

automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ." *See* 47 U.S.C. § 227(b)(1)(A).

18.     It is also unlawful for any entity to make more than one call in a 12-month period to any number that is registered with the National Do-Not-Call Registry or that entity's internal do-not-call list. *See* U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2) & (d).

19.     Congress has provided a private right of action in the TCPA to persons who receive calls in violation of the statute. *See* 47 U.S.C. §§ 227(b)(3); (c)(5).

20.     A plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

21.     The Federal Communications Commission published regulations that "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 F.C.C. Rcd. 12391, 12397 (1995).

## **FACTUAL ALLEGATIONS**

22.     Defendant USDS engages in the sale of automobile warranties, including by telephone solicitation.

23.     USDS increases the volume of calls it places through the use of an automatic telephone dialer system ("ATDS").

24.     USDS makes calls using an ATDS to cellular telephones whose owners have not provided USDS with express prior consent to receive such calls, including making calls to each Class member.

25.     Numerous consumer complaints have been made regarding USDS's telemarketing practices, as is evident from the BBB website, which includes dozens of complaints such as the following two complaints:

(1) "This company calls me every 2 days, I've asked to be removed but they still call. When I block their number they call from another number. This company continues to harass me by calling every couple days on my cell and work line. I've asked politely to be removed but they still continue to call." *See* BBB Complaint, US Dealer Services, Inc., 9/11/2020;

and

(2) "I am on the NATIONAL DO NOT CALL REGISTRY … and this company calls me MULTIPLE TIMES PER WEEK and I want it to STOP. They always call from a "spoofed" number to make the call appear local (DECEPTIVE PRACTICE) and the initial ROBO CALL will frequently HANG UP AFTER I SELECT     TO     SPEAK     TO     A     REPRESENTATIVE." *See* BBB Complaint, US Dealer Services, Inc., 12/11/2020.

## FACTUAL ALLEGATIONS REGARDING NAMED PLAINTIFF TODD FRATILLA

26.     Plaintiff Todd's cellular phone number, ending in -2582, has been listed on the National Do-Not-Call Registry since 2007.

27.     Todd is the subscriber and sole user of the -2582 cellular telephone number and is financially responsible for phone service to that number, including the cellular costs and data storage usage incurred as a result of the unlawful calls made by USDS.  Todd's cellular telephone number is used primarily for personal and residential use and the -2582 cellular telephone number is not listed as a business number.

28.     Beginning at least as far back as 2019, Todd began receiving telemarketing calls on his cellular phone from USDS.

29.     As displayed on Todd's cellular telephone caller ID, each of the telemarketing calls from USDS came from telephone numbers with local area codes.  In other words, upon information and belief, USDS engaged in a practice called "spoofing" – that is, USDS used technology to

manipulate and disguise the number from which it was really calling from to make it appear on Todd's caller ID to be a call from a local number.  As a result, Todd was inclined to answer the calls rather than let them go to voicemail.

30.     Each time he answered, Todd heard the same automated prerecorded voice whose message stated that the caller was attempting to reach him regarding "your vehicle warranty." The content of the prerecorded message made clear that the caller was trying to sell Todd an automobile extended warranty.

31.     The recorded message offered an option to press a particular number to be placed on the caller's internal do-not-call list.  On multiple occasions, Todd followed those automated prompts and pressed the indicated number in order to put an end to USDS's unsolicited calls. Despite this, USDS continued to make repeated calls to Todd's cellular telephone.

32.     On December 14, 2020, more than thirty days after Todd's initial do-not-call request, Todd received yet another call from USDS from a 754-area code (Broward County):



33. Upon answering the call, Todd heard the same automated voice recording. Rather than hang up, Todd stayed on the line, and when the recording ended, the call was automatically transferred to a live person who identified herself as "Mary." When asked, "Mary" declined to identify the name of the actual company she was calling from, but instead only stated that she was in the "Auto Warranty Division" and the "Vehicle Registration Department." After requesting information from Todd regarding his vehicle, "Mary" then transferred the call to another representative who began reading a script regarding the extended auto warranties being offered. Todd asked the second individual what company she was with, and she stated that she was with a company called "US Dealer Services" and also directed Todd to the company's website at "USDealerServices.com."

34. During the December 14, 2020 call, Todd expressly asked the salesperson to put him on the company's do-not-call list, reiterating previous requests, after which the call was ended.

35. Since as far back as approximately 2019, Todd has received well over twenty (20) unsolicited calls from USDS on his cell phone. Because Todd does not know all of the phone numbers used by USDS to place the calls, he cannot identify each call that USDS made to him. The call records documenting the information regarding each call made to Todd, including the exact date and time of the call, the telephone numbers used to make the calls, and the timing of each do-not-call request made by Todd, are in the possession, custody, or control of Defendant.

### FACTUAL ALLEGATIONS REGARDING NAMED PLAINTIFF LORRAINE FRATILLA

36. Plaintiff Lorraine's cellular phone number, ending in -5235, has been listed on the National Do-Not-Call Registry since 2018.

37. Lorraine is the subscriber and sole user of the -5235 cellular telephone number and is financially responsible for phone service to that number, including the cellular costs and data

storage usage incurred as a result of the unlawful calls made by USDS. Lorraine's cellular telephone number is used primarily for personal and residential use and the -5235 cellular telephone number is not listed as a business number.

38.     Lorraine began receiving telemarketing calls on her cellular telephone from USDS at least as far back as 2019.

39.     Like the calls received by Todd, the calls placed to Lorraine's cellular telephone number by USDS were "spoofed" calls and appeared on Lorraine's caller ID as being from area codes in the surrounding areas in Florida.

40.     Each time she answered, Lorraine heard the same prerecorded message trying to sell her an automobile extended warranty.

41.     To prevent future calls, Lorraine followed the phone prompts to press the requested number indicating that she wished to be placed on USDS's internal do-not-call list. However, Lorraine received multiple calls from USDS after she made each request.

42.     On December 16, 2020, more than thirty days after Lorraine's initial do-not-call request, Lorraine received yet another unsolicited call on her cellular phone from USDS from a 305-area code (Miami-Dade County):



43.    When she answered the December 16, 2020 call, she heard the same prerecorded automated message regarding a vehicle warranty.   After the message ended, the call was automatically transferred to a live agent, who then transferred the call to another representative, who confirmed that she was calling from USDS.  Lorraine then asked for additional information, including the location of the business, at which time the representative promptly disconnected the call.

44.    Since as far back as approximately 2019, Lorraine has received numerous unsolicited calls from USDS on her cell phone.  Because Lorraine does not know all of the phone numbers used by USDS to place the calls, she cannot identify each call that USDS made to her. The call records documenting the information regarding each call made to Lorraine, including the exact date and time of the call, the telephone numbers used to make the calls, and the timing of each do-not-call request made by Lorraine, are in the possession, custody, or control of Defendant.

## FACTUAL ALLEGATIONS REGARDING ALL PLAINTIFFS

45.     Despite multiple demands to be placed on USDS's internal do-not-call list, USDS has continued to make calls to Plaintiffs.

46.     USDS continued placing calls to Plaintiffs more than thirty days after each request to be placed on the internal do-not-call list.

47.     Defendant did not have reasonable practices and procedures in place to effectively prevent telephone solicitations in violation of the TCPA as evidenced by its calls to Plaintiffs who repeatedly requested that Defendant stop calling.

48.     USDS has made more than one call to each Plaintiff within a 12-month period.

49.     The calls to Plaintiffs were placed by USDS using an ATDS.

50.     Upon information and belief, USDS's ATDS system has the capacity to store or produce telephone numbers to be called using a random or sequential number generator which includes the capacity to dial the stored numbers through auto-dialers and predictive dialers, without human intervention.

51.     The fact that each of the calls made by USDS to Plaintiffs used an artificial and prerecorded voice demonstrates that USDS was using an ATDS to make the subject calls.  The repetitive and generic nature of the recorded message further demonstrates that an ATDS was used to make the calls.

52.     USDS's "spoofing" of telephone numbers is also consistent with USDS's use of an ATDS because computer software was used to manipulate the way the call appeared on Plaintiffs' Caller ID's.

11

53.     USDS's use of ATDS technology is further demonstrated by the numerous complaints made by other consumers found on the BBB website, referenced above at paragraph 25.

54.     Use of an ATDS is also demonstrated by the fact that USDS made repeated, numerous calls to Plaintiffs' cellular phones and continuously ignored Plaintiffs' requests to USDS to cease the telemarketing calls.

55.     Plaintiffs did not provide prior consent to receive telephone calls on their cellular telephones from USDS.

56.     The calls made by USDS were not made for emergency purposes.  The content of the prerecorded messages, as well as the content of the calls with the live representatives described above, demonstrate that the calls were made for the purpose of marketing, advertising, and promoting USDS's business and services to Plaintiffs as part of an overall telemarketing strategy.

57.     USDS is responsible for making the above-described automated phone calls.

58.     USDS has made a significant number of automated and/or prerecorded calls to persons in Florida and throughout the United States.

59.     USDS continues to make similar automated and/or prerecorded calls to persons on their personal telephones in Florida and throughout the United States.

60.     Plaintiffs were damaged by USDS's repeated, unsolicited telemarketing calls to their cell phones.  *See Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1306 (11th Cir. 2020) ("[t]he receipt of more than one unwanted telemarketing call . . . is a concrete injury that meets the minimum requirements of Article III standing." (quoting *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1270 (11th Cir. 2019)).

## <u>CLASS ACTION ALLEGATIONS</u>

61.     *Class Definitions*.  Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiffs bring

this case as a class action on behalf of the National Classes defined as follows:

<u>ATDS Class</u>:  All persons in the United States to whom Defendant (a) made

one or more non-emergency telephone calls; (b) promoting Defendant's goods or

services; (c) to their cellular telephone number; (d) through the use of an automatic

telephone dialing system or an artificial or prerecorded voice; and (e) at any time

in the period that begins four years before the date of filing this Complaint.

<u>Internal Do-Not-Call Class</u>:   All persons in the United States who: (a)

received more than one telemarketing call initiated by Defendant; (b) in a 12-month

period; (c) for the purpose of promoting or selling Defendant's good or services;

(d) on their cellular telephone line or residential telephone line; (e) after requesting

not to receive further telemarketing calls made by Defendant; and (f) at any time in

the period that begins four years before the date of filing this Complaint.

<u>National Do-Not-Call Class</u>:   All persons in the United States who: (a)

received more than one call initiated by Defendant; (b) in a 12-month period; (c)

for the purpose of promoting or selling Defendant's good or services; (d) on their

cellular telephone line or residential telephone line; (e) whose cellular or residential

telephone line number(s) appear on the National Do-Not-Call Registry; and (f) at

any time in the period that begins four years before the date of filing this Complaint.

Excluded from each of these Classes are Defendant, any entity in which Defendant has a

controlling interest or that has a controlling interest in Defendant, and Defendant's legal

representatives, assignees, and successors.  Also excluded are the judge to whom this case is

assigned and any member of the judge's immediate family, persons who execute and file a timely request for exclusion, and the legal representatives, successors, or assignees of any such excluded person.

62.     *Numerosity*:  The Classes are each so numerous that joinder of all members is impracticable.  On information and belief, the Classes are at least in the thousands, of which Plaintiffs are members.  Additionally, the disposition of the claims of the Classes in a single action will provide substantial benefits to all parties and the Court.

63.     *Commonality*:  There are numerous questions of law and fact common to Plaintiffs and members of the Classes.  These common questions of law and fact include, but are not limited to, the following:

a.      Whether Defendant used an ATDS when making the telephone calls that are the subject of this lawsuit;

b.      Whether Defendant used an artificial or prerecorded voice message when it made the calls that are the subject of this lawsuit;

c.      Whether Defendant was engaged in telemarketing when it made the calls that are the subject of this lawsuit;

d.      Whether Defendant implemented and followed appropriate procedures for maintaining a list of persons who requested not to receive telemarketing calls and for effectively preventing telephone solicitations to such persons;

e.       As to Plaintiffs and the ATDS Class, whether Defendant violated 47 U.S.C. § 227(b)(1)(A) by making any call to a cellular telephone number using an ATDS or artificial or prerecorded voice (other than a call made for emergency purposes or made with the prior express consent of the called party);

14

      f.     As to Plaintiffs and the Internal Do-Not-Call Class, whether Defendant violated 47 C.F.R. § 64.1200(d) by initiating any call for telemarketing purposes to Plaintiffs and members of the Internal Do-Not-Call Class without implementing and following proper procedures for maintaining a list of persons who requested not to receive telemarketing calls;

      g.     As to Plaintiffs and the National Do-Not-Call Class, whether Defendant violated 47 C.F.R. § 64.1200(c) by initiating more than one telephone solicitation within a 12-month period to Plaintiffs and members of the National Do-Not-Call Class who have registered their telephone numbers with the National Do-Not-Call Registry;

      h.     Whether Defendant knowingly and/or willfully violated the TCPA or the rules prescribed under it when it made the calls that are the subject of this lawsuit, thus entitling Plaintiffs and the Class members to treble damages; and

      i.     Whether Defendant should be enjoined from violating the TCPA in the future.

64.    *Typicality*.  Plaintiffs' claims are typical of the claims of the Classes.  Plaintiffs' claims, like the claims of Classes, arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

65.    *Adequacy of Representation*.  Plaintiffs will fairly and adequately protect the interests of the Classes.  Neither Plaintiffs nor their counsel have interests that are contrary to or that conflict with those of the proposed Classes.  Plaintiffs are represented by counsel skilled and experienced in class actions.  Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial resources to do so.

66.    *Predominance*.  Defendant has engaged in a common course of conduct toward Plaintiffs and members of the Classes.  Common questions of law and fact predominate over

15

questions affecting only individual class members.  Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

67.     *Superiority*.   A class action is the superior method for the fair and efficient adjudication of this controversy.  Class-wide relief is essential to compel Defendant to comply with the TCPA.  The interest of individual members of the Classes in individually controlling the prosecution of separate claims against Defendant is small because damages in an individual action for violation of the TCPA are small, and the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for individual Class members to pursue redress for these wrongs.  Management of these claims is likely to present significantly fewer difficulties than are presented in so many class claims because the calls at issue are all automated.  Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves the resources of the parties and the court system, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

68.     *Injunctive and Declaratory Relief Appropriate*.  Defendant has acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate on a class-wide basis.  Moreover, on information and belief, Plaintiffs allege that the automated calls made by Defendant that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

69.     Plaintiffs are not aware of any other certified class action litigation concerning this controversy already commenced by others who meet the criteria for class membership as described above.

## COUNT I
### (Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A) – Cellular Telephone Calls – ATDS Class)

70.     Plaintiffs reallege and incorporate by reference all allegations set forth in paragraphs 1 through 69.

71.     The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls to the cellular telephone numbers of Plaintiffs and members of the ATDS Class using an ATDS and/or artificial or prerecorded voice without prior express consent.

72.     As a result of Defendant's violations of the TCPA, 47 U.S.C. §227(b)(1)(A), Plaintiffs and members of the ATDS Class presumptively are entitled to an award of $500 in damages for each and every call to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

73.     Plaintiffs and members of the ATDS Class are also entitled to, and do seek, injunctive relief prohibiting Defendant from violating the TCPA, 47 U.S.C. § 227(b)(l)(A), by making calls to any cellular telephone number using an ATDS and/or artificial or prerecorded voice in the future without prior express consent.

## COUNT II
### (Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(l)(A) – Cellular Telephone Calls – ATDS Class)

74.     Plaintiffs reallege and incorporate by reference all allegations set forth in paragraphs 1 through 69.

75.     The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(l)(A), by making calls to the

cellular telephone numbers of Plaintiffs and members of the ATDS Class using an ATDS and/or artificial or prerecorded voice without prior express consent.

76.     Defendant knew that it lacked Plaintiffs' consent to make the calls to their respective cellular phone.

77.     As a result of Defendant's knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1 )(A), Plaintiffs and members of the ATDS Class are entitled to treble damages of up to $1,500 for each and every call to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

78.     Plaintiffs and members of the ATDS Class are also entitled to, and do seek, injunctive relief prohibiting Defendant from violating the TCPA, 47 U.S.C. § 227(b)(l)(A), by making calls to any cellular telephone number using an ATDS and/or artificial or prerecorded voice in the future without prior express consent.

### COUNT III
**(Violations of 47 C.F.R. § 64.1200(d) & 47 U.S.C. § 227(c)(5) – Internal Do-Not-Call List – Internal Do-Not-Call Class)**

79.     Plaintiffs reallege and incorporate by reference all allegations set forth in paragraphs 1 through 69.

80.     The foregoing acts and omissions of Defendant constitute numerous and multiple violations of 47 C.F.R. § 64.1200(d), by initiating any call for telemarketing purposes to Plaintiffs and members of the Internal Do-Not-Call Class, without following procedures for maintaining a list of persons who request not to receive telemarketing calls (and therefore request to be placed on the internal do-not-call list).  This includes Defendant's failure to properly record do-not-call requests, failure to maintain a record of do-not-call requests, and failure to honor do-not-call requests.

81.     At all relevant times, Defendant did not have reasonable practices and procedures in place to effectively prevent telephone solicitations in violation of the TCPA as evidenced by its calls to Plaintiffs who repeatedly requested that Defendant stop calling.

82.     As a result of Defendant's violations of 47 C.F.R. § 64.1200(d), Plaintiffs and members of the Internal Do-Not-Call Class are entitled to an award of $500 in statutory damages for each and every call in violation of the internal do-not-call list regulation, pursuant to 47 U.S.C. § 227(c)(5)(B).

83.     Plaintiffs and members of the Internal Do-Not-Call Class are also entitled to and do seek injunctive relief prohibiting Defendant from violating 47 C.F.R. § 64.1200(d) by failing to follow procedures for maintaining a list of persons who request not to receive telemarketing calls in the future, pursuant to 47 U.S.C. § 227(c)(5)(A).

**COUNT IV**
**(Knowing and/or Willful Violations of 47 C.F.R. § 64.1200(d) & 47 U.S.C. § 227(c)(5) –**
**Internal Do-Not-Call List – Internal Do-Not-Call Class)**

84.     Plaintiffs reallege and incorporate by reference all allegations set forth in paragraphs 1 through 69.

85.     The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of 47 C.F.R. § 64.1200(d), by initiating any call for telemarketing purposes to Plaintiffs and members of the Internal Do-Not-Call Class without having proper procedures in place for making a telemarketing call to Plaintiffs or for maintaining a list of persons who request not to receive telemarketing calls. This includes Defendant's failure to properly record do-not-call requests, failure to maintain a record of do-not-call requests, and failure to honor do-not-call requests.

86.     At all relevant times, Defendant knew that it did not have reasonable practices and procedures in place to effectively prevent telephone solicitations in violation of the TCPA as evidenced by its calls to Plaintiffs who repeatedly requested that Defendant stop calling.

87.     As a result of Defendant's knowing and/or willful violations of 47 C.F.R. § 64.1200(d), Plaintiffs and members of the Internal Do-Not-Call Class are entitled to an award of treble damages of up to $1,500 for each and every call in violation of the internal do-not-call list regulation, pursuant to 47 U.S.C. § 227(c)(5)(B).

88.     Plaintiffs and members of the Internal Do-Not-Call Class are also entitled to and do seek injunctive relief prohibiting Defendant from violating 47 C.F.R. § 64.1200(d) by failing to follow procedures for maintaining a list of persons who request not to receive telemarketing calls in the future, pursuant to 47 U.S.C. § 227(c)(5)(A).

## COUNT V
### (Violations of 47 C.F.R. § 64.1200(c) & 47 U.S.C. § 227(c)(5) – National Do-Not-Call Registry – National Do-Not-Call Class)

89.     Plaintiffs reallege and incorporate by reference all allegations set forth in paragraphs 1 through 69.

90.     The foregoing acts and omissions of Defendant constitute numerous and multiple violations of 47 C.F.R. § 64.1200(c), by initiating more than one telephone solicitation within a 12-month period to Plaintiffs and members of the National Do-Not-Call Class who have registered their telephone numbers with the National Do-Not-Call Registry.

91.     As a result of Defendant's violations of 47 C.F.R. § 64.1200(c), Plaintiffs and members of the National Do-Not-Call Class are entitled to an award of $500 in statutory damages for each and every call initiated to them after registering their telephone numbers with the National Do-Not-Call Registry, pursuant to 47 U.S.C. § 227(c)(5)(B).

92.     Plaintiffs and members of the National Do-Not-Call Class are also entitled to, and do seek, injunctive relief prohibiting Defendant from violating 47 C.F.R. § 64.1200(c) by initiating more than one telephone solicitation to telephone subscribers who registered his or her telephone number(s) with the National Do-Not-Call Registry in the future, pursuant to 47 U.S.C. § 227(c)(5)(A).

<u>**COUNT VI**</u>
**(Knowing and/or Willful Violations of 47 C.F.R. § 64.1200(c) & 47 U.S.C. § 227(c)(5) – National Do-Not-Call Registry – National Do-Not-Call Class)**

93.     Plaintiffs reallege and incorporate by reference all allegations set forth in paragraphs 1 through 69.

94.     The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of 47 C.F.R. § 64.1200(c), by initiating more than one telephone solicitation within a 12-month period to Plaintiffs and members of the National Do-Not-Call Class who have registered their telephone numbers with the National Do-Not-Call Registry.

95.     At all relevant times, Plaintiff knew, or should have known, that it was initiating telephone solicitations to numbers listed on the National Do-Not-Call Registry.

96.     As a result of Defendant's knowing and/or willful violations of 47 C.F.R. § 64.1200(c), Plaintiffs and members of the National Do-Not-Call Class are entitled to an award of treble damages of up to $1,500 for each and every call made to them, after registering their telephone numbers with the National Do-Not-Call Registry, pursuant to 47 U.S.C. § 227(c)(5)(B).

97.     Plaintiffs and members of the National Do-Not-Call Class are also entitled to, and do seek, injunctive relief prohibiting Defendant from violating 47 C.F.R. § 64.1200(c) by initiating more than one telephone solicitation to any telephone subscriber who has registered their telephone

numbers with the National Do-Not-Call Registry in the future, pursuant to 47 U.S.C. § 227(c)(5)(A).

## DEMAND FOR JURY

Plaintiffs demand a trial by jury for all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs Todd Fratilla and Lorraine Fratilla, individually and on behalf of the Classes, respectfully request a judgement granting the following relief:

a.  Certification of the proposed Classes;

b.  Appointment of Plaintiffs as representatives of the proposed Classes;

c.  Appointment of the undersigned counsel as counsel for the proposed Classes;

d.  A declaration that Defendant's actions complained of herein violated the TCPA;

e.  An injunction enjoining Defendant from engaging in the unlawful conduct set forth herein;

f.  An award to Plaintiffs and the Classes of statutory damages, as allowed by law;

g.  An award of attorneys' fees and costs, as allowed by law and/or equity, to Class counsel in the event one or more of the Classes are certified;

h.  Pre-judgment and post-judgement interest on monetary relief; and

i.  An order granting all other and further relief as the Court deems necessary, just, and proper.

Dated: December 30, 2020

Respectfully submitted,

**ATHERTON GALARDI MULLEN & REEDER PA**
224 Datura Street, Suite 815
West Palm Beach, Florida 33401
Telephone: (561) 293-2530
Facsimile: (561) 293-2593

By: **_/s/ Scott W. Atherton_**
SCOTT W. ATHERTON
Florida Bar No. 0749591
E-mail:  scott@athertonlg.com
TERENCE M. MULLEN
Florida Bar No. 191957
E-mail: terence@athertonlg.com
MIA A. WILLIAMS
Florida Bar No. 1010648
E-mail: mia@athertonlg.com

*Attorneys for Plaintiffs and the Proposed Classes*